*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LILLER, Minor.

UNPUBLISHED
August 1, 2019

No. 346685
Wayne Circuit Court
Family Division
LC No. 17-000792 - NA

Before: TUKEL, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating his parental rights to the minor child, JLL, under MCL 712A.19b(3)(a)(*ii*) (child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period), (c)(*i*) (conditions that led to the adjudication continue to exist and no reasonable likelihood that they would be rectified within a reasonable time considering the child's age), and (j) (reasonable likelihood of harm to the child if returned to parent). We affirm in part, reverse in part, and remand for further proceedings.

## I. REASONABLE EFFORTS

On appeal, respondent contends that the trial court did not make reasonable efforts to provide services for reunification. We disagree.

Respondent did not preserve this issue for appeal by an objection or contention in the trial court that the services were inadequate. *In re Frey,* 297 Mich App 242, 247; 824 NW2d 569 (2012). We review unpreserved issues for plan error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

In child protection proceedings, the Department of Health and Human Services (DHHS) has a duty to expend reasonable efforts to rectify the conditions that led to the child's removal and to reunify the child with the respondent unless certain aggravating circumstances exist. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); *In re Frey*, 297 Mich App at 247; MCL 712A.19a(2). "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich at 152. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for

-1-

termination." *Id*. at 160. In determining whether the DHHS fulfilled its duties to an incarcerated parent under the court rules and statutes, this Court considers whether the parent was "afforded a meaningful and adequate opportunity to participate." *Id*. at 152. Although the DHHS has a responsibility to expend reasonable efforts to provide reunification services, there also exists a commensurate responsibility on the part of the respondent to participate in the services that are offered. *In re Frey*, 297 Mich App at 248.

In this case, respondent was offered the opportunity to participate in the proceedings. The record shows that the court and the agency made sufficient efforts while respondent was incarcerated to ensure that respondent had the opportunity to be present and participate, either by speakerphone or video link. The court adjourned two hearings when respondent was unable to be present. When his whereabouts were unknown, the court ordered publication of notice. The times he was not present at hearings occurred because respondent failed to maintain contact with the agency, his attorney, and the court when he was released from prison, or there were problems at the prison when he was incarcerated which prevented him from being present by phone. Respondent attended the termination hearing by speakerphone and testified on his own behalf.

The record also shows that a case service plan was created for respondent and was mailed to him. However, respondent had moved to another prison without informing the DHHS and did not receive that case service plan. When his whereabouts became known, the case service plan was again mailed to respondent and he then received it. The DHHS contacted the prisons to find out what services would be available but had not been able to get that information. Respondent was informed by the caseworkers when they spoke with him about the programs he was supposed to engage in. The agency telephoned respondent and maintained contact with him by letters, informing him of the progress of the case and what he needed to do. Although reasonable services are generally required when a child is removed, such services cannot be rendered without the cooperation of the parent. When respondent was incarcerated in Ohio, it was impossible for the DHHS workers to coordinate any prison services with the treatment plan.

Additionally, respondent maintained minimal contact with the agency. When respondent was released from prison, he remained in Ohio without informing the DHHS and his whereabouts were again unknown. During that time, he made no attempt to contact the DHHS, comply with the treatment plan, or make contact with JLL. Three months after his release, respondent was incarcerated again following his conviction for armed robbery. It was only after he was reincarcerated, shortly before the termination hearing, that the DHHS was able to send the treatment plan to the address where he would receive it and regained the ability to arrange for respondent's presence and participation at the hearings. Respondent reported that there were very limited services available in the prison, and most were run by the inmates. Respondent would not be released from this incarceration until 2020. By July 10, 2018, respondent was moved to a different facility in Ohio. Despite making reasonable efforts, the DHHS had no ability to provide outside services to an incarcerated person and had no control over the prison or its policies.

Evaluating the efforts made by DHHS, we find that the trial court did not clearly err by concluding that the DHHS made reasonable efforts for respondent while he was incarcerated. Respondent did not accept his commensurate responsibility because during the three months that he was released from prison, he did not return to Michigan to try and make contact with JLL or

with the DHHS. Nor did he inform the DHHS of his whereabouts. Thus, the record shows that the DHHS made reasonable efforts towards reunification.

## II. STATUTORY GROUNDS

Respondent argues on appeal that there was not clear and convincing evidence to support the statutory grounds for termination. We disagree.

On appeal from a termination of parental rights proceeding, this Court reviews the trial court's findings of fact for clear error. MCR 3.977(K); *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999). To terminate parental rights, the DHHS must establish by clear and convincing evidence the existence of at least one statutory ground for termination found in MCL 712A.19b(3). *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). Respondent's parental rights were terminated under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> (a) The child has been deserted under any of the following circumstances:

> \* \* \*

> (*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

> \* \* \*

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

JLL and his infant sibling were removed from their mother's care in May 2017.[1] Respondent testified that he did not know that JLL was a temporary court ward until July 2017.

---

[1] JLL's mother died during the pendency of this case.

However, respondent appeared at the continued preliminary hearing on May 24, 2017, represented by an attorney, and was fully apprised of all the reasons why he was there. Respondent testified that the last time he spoke to JLL was around Christmas of 2015. He testified that he had been released from prison in the beginning of 2015 and had provided for JLL until the middle of 2015. He was reincarcerated in early 2016 and was released in June 2017, about one month after JLL was removed from his mother's care. Respondent was reincarcerated by September 2017. During his 2017 release, he did not come to Michigan and did not contact the DHHS. He did not contact or provide any support for JLL. Once back in prison, he did not write, call, or send any financial support to JLL. Failure to make "any substantial effort to communicate with [the child] or obtain assistance in regaining custody of [the child] for a period well beyond the statutory period" constitutes grounds for termination under MCL 712A.19b(3)(a)(*ii*). *In re TM*, 245 Mich App 181, 193-194; 628 NW2d 570 (2001). We find that there was clear and convincing evidence to support termination under MCL 712A.19b(3)(a)(*ii*).

Respondent had not provided for JLL most of the child's life, including the limited time that respondent was not incarcerated. At the time of the termination hearing, JLL had spent most of his life with his maternal grandmother, who reported that respondent had not provided anything for him. We find that there was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time. Therefore, the trial court did not clearly err in finding clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(*i*).

There was also clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(j). Respondent had a substantial criminal history, including drug offenses. He had never provided for JLL. When released, he did nothing to facilitate a relationship with his son; he stayed in Ohio and did not inform the DHHS of his whereabouts. These actions demonstrate that respondent's priority was pursing criminal endeavors rather than providing for JLL. Based on his conduct, there was clear and convincing evidence that there was a reasonable likelihood that JLL would be harmed if he was placed with respondent.

## III. BEST INTERESTS

Respondent argues, and petitioner concedes that the trial court clearly erred in finding by a preponderance of the evidence that termination of his parental rights was in JLL's best interests. We agree.

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the child's best interests before it can order termination of parental rights. MCL 712A.19b(5). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 88-90; 836 NW2d 182 (2013). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster,* 303 Mich App 485, 496; 845 NW2d 540 (2013).

The trial court failed to address whether termination was appropriate in light of the fact that JLL was placed with his maternal grandmother. Although the issue was raised by respondent, the trial court failed to recognize that JLL's sibling, also respondent's son, lived with JLL in the maternal grandmother's home under a guardianship, and how this situation would impact upon JLL. "A trial court's failure to explicitly address whether termination is appropriate in light of the [child's] placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012). Therefore, although we affirm the trial court's finding of statutory ground to terminate respondent's parental rights, we reverse the court's best-interest determination and remand for further proceedings on the child's best interests only.

## IV. CONCLUSION

Affirmed in part; reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Michael J. Riordan